

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-6656
Re: Is the Chairman of the
County Board of School
Trustees of Bexar County
required to approve war-
rant paying the County
Superintendent's salary
monthly as required by
Article 2700-1?

We are in receipt of your opinion request reading as follows:

"Statement: There is a conflict between a proposed law governing the payment of county superintendents' salaries as shown in House Bill 292 and the same offices as shown in Senate Bill 246, Section 19, and present statute 2700.1. We need a statement from the Attorney General as to which method of payment is to be used in Bexar County instructing the chairman of the county board of school trustees of that county as to what salary the county superintendent is legally entitled to receive under the law governing the payment of salary of county superintendent.

"The June salary of the county superintendent of Bexar County is in question. We would like and appreciate, as would he, an early answer to the following questions:

"1. With reference to this question, please be referred to Article 2688 providing for the office of county superintendent. Please be referred to Article 2700.1. Also be referred to House Bill 292 as passed by the last session and filed with the governor, and be further referred to Senate Bill 246 filed by the governor without signature. Be further

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

referred to Acts of 1941, 48th Legislature, as amended by the 49th including the following: 2815a, -b, -c, -d, -e, -f, -g, -g-1.

"In none of the various school acts passed by the Legislature is there anywhere mentioned a school equalization fund. There is authorized in Harris and Dallas Counties because of population a county equalization fund from which fund Article 2815g-1a exempts Bexar County.

"Question to be answered: Is the chairman of the county board of school trustees of Bexar County required to approve warrant paying the county superintendent's salary monthly as required by Article 2700.1 at the present time or in case the governor approves it in accordance with 2700.1 as amended by the 49th Legislature in House Bill 292 and not yet signed?

"Discussion: Inasmuch as no fund is authorized by the Legislature to be set up in any county which is called the school equalization fund, the only such fund having a similar name is the state equalization law. Is it not reasonable to assume that the Legislature meant the fund as authorized in Article 2700.1 and named county administration expense fund as authorized by 2700.1 and called county administration fund.

"II. Inasmuch as Senate Bill 246 was passed and presented to the governor and filed by him and became a law on June 2, presuming that the governor will approve House Bill 292, but has not done so as yet, the two laws being in conflict on the matter of county school superintendents' salaries of Bexar County, which law governs? If your answer is the general law controls over a prior special law, will you please answer the following question: Is the chairman of the county board of school trustees of Bexar County required to approve the salary of the county school superintendent monthly as authorized under said general law 2700.1 as amended during the recent session of the 49th Legislature or if the governor should veto House Bill 292 is the chairman of the county board of school trustees required to approve the salary of the county superintendent as authorized by 2700.1 present statute?

Honorable L. A. Woods, page 3

"III    In case the answer to the two foregoing
questions are answered affirmatively or either of
them, no other question need to be answered, but in
case of negative answers to all of the above questions,
please answer this question:  Is the Legislature con-
stitutionally authorized to pass a law affecting only
one county in this state, namely Bexar County, prevent-
ing him from securing county superintendent's salary
as set up in Senate Bill 246?  In other words, is Senate
Bill 246, Section 10 only, unconstitutional inasmuch as
it is applicable to only one county of this state inasmuch
as it deprives the county superintendent of his salary?"

          The Governor filed House Bill 292, without his approval,
in the  Office of the Secretary of State on June 25 and we have just
obtained a copy of same.    This bill was passed by the House by the
following vote:  Yeas 120, Nays 2, and the House concurred in Senate
amendments by the following vote:  Yeas 104, Nays 0.  It was passed
by the Senate by the following vote:  Yeas 28, Nays 0.  It is, there-
fore, in immediate effect, but there will be no funds with which to
pay the increased salaries until after September 1, 1945.  We quote
the following from Section 1 of the Act:

          "In making the annual budget for county adminis-
tration expense, the County School Trustees shall make
an allowance out of the State Available School Fund for
the salary and expenses of the office of the county
superintendent and the same shall be determined by the
resident scholastic population of the county.  It shall
be the duty of the County Board of Trustees to file the
budget for county administration expense with the State
Department of Education on or before September first of
each scholastic year, the budget to be approved and cer-
tified to by the President of the County Board of Educa-
tion and attested to by the County Superintendent.  The
compensation herein provided for shall be paid monthly
upon the order of the County School Trustees; provided
that the salary for the month of September shall not be
paid until the County Superintendent presents a receipt
from the State Superintendent showing that he has made
all reports required of him."

Honorable L. A. Woods, page 4

The term "budget for County administration expenses" used in the preceeding quotation means the annual budget prepared by the County Board of School Trustees for the County Administration Expense Fund authorized by Article 2827a to pay the salaries of the County Superintendent, his assistants, School Supervisors, and such other expenses of his office as are specifically authorized by statute. (Articles 2821, 2700, as amended in 1943 and in 1945) This budget consists of specific items and a fixed amount is stated for each item. The amount so budgeted is deducted by the State Superintendent of Public Instruction from the per capita apportionment made to the county each school year from the State Available School Fund and forwarded to the county depository to be placed to the credit of the above mentioned fund from which the respective items of the budget are to be paid upon the order of the County Board of School Trustees. The statutes make no provision for amending the budget. The transfer of all or any part of the amount budgeted for one item to another item is not permitted, nor does the statute contemplate the expenditure of an amount in excess of the amount budgeted for a particular purpose.

The budget for the school year beginning September 1, 1944, was required by the statutes to be filed with the State Department of Education on or before September 1, 1944. The State Superintendent of Public Instruction informs us that he has, as directed by the statute, (Art. 2827a) remitted to the county depositories of the respective counties the full amount due for the current school year ending August 31, 1945, as shown by the respective budgets filed with, and approved by him.

The current budget for the County Superintendent of Bexar County, was based on his salary of $4800 per annum, as fixed by the statute at the time the budget was prepared. His salary was increased to $5,000 by H. B. 292, effective June 25, 1945. However, no provision was made to pay him that part of the increase for the two months and six days intervening between the effective date of H. B. 292 and September 1, 1945. Since there is no money available to pay the amount of the increase (approximately $36.65) for this period of time, no more than $400 per month, the amount fixed in the current budget for his salary, can be legally paid him by the County Board of School Trustees of Bexar County for the months of June, July and August, 1945. Said Board may provide in the budget, which it will prepare for the school year, beginning September 1, 1945, for $5,000 to be paid the County Superintendent, the amount of his salary for that school year. However, it may not provide in the new budget for said school year for the payment of the amount of increase in salary allowed the County Superintendent by H. B. 292 prior to September 1, 1945, for the per capita apportionment allotted to each county from the

State Available School Fund, the fund from which all items included in the budget are paid, by the State Board of Education, is for the support and maintenance of the schools for the school year beginning September 1, 1945, and must be expended only for such purposes. Articles 2827, 2827a and 2700, as amended by H. B. 292.

The foregoing conclusions apply to all elective County Superintendents so affected by Article 2700, as amended by H. B. #292.

Section 10 of S. B. 246, effective June 2, 1945, fixes the salary of County Superintendents in counties having a population of not less than 300,000, nor more than 500,000, according to the last preceding Federal Census, as $5050 per annum, to be paid out of the school equalization fund. Since Bexar County has no such fund, for it was exempted from the provisions of Articles 2815a-2815g, authorizing Dallas, Harris and other counties of more than 210,000 population to create a county school equalization fund, therefore, that part of S. B. 246 fixing the salary of County Superintendents is inapplicable to Bexar County.

We cannot construe, as you suggest we may, the term "school equalization fund," as used in S. B. 246, to mean the "County Administration Expense Fund," as that term is used in H. B. 292. To construe these terms as meaning the same fund would be to hold that the salaries of the County Superintendents of Dallas, Harris, and all other counties, if any, operating under the provisions of Article 2815a et seq., must be paid out of the County Administration Expense Fund, contrary to the plain provisions of Article 2815a, which provides that the "county equalization fund" is to be used, among other things, "to defray the costs of the county school administration," which includes the salary of the County Superintendent.

We believe the legislature used the term "school equalization fund" advisedly, and intended that the salaries of County Superintendents of those counties having such a fund would continue to be paid out of that fund.

The Chairman of the County Board of School Trustees is not required to approve the salary of the County Superintendent monthly, but same shall be paid monthly "upon the order of the County School Trustees."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
C. F. Gibson
Assistant

APPROVED OPINION COMMITTEE
BY BWB
CHAIRMAN

CFG:EP